UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| | |
|---|---|
| Case No. **LACV 17-7886-VAP (MRWx)** | Date **January 10, 2018** |
| Title ***James Ortiz v. Citibank, N.A. et al.*** | |

Present: The Honorable VIRGINIA A. PHILLIPS, CHIEF UNITED STATES DISTRICT JUDGE

| BEATRICE HERRERA | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** MINUTE ORDER (IN CHAMBERS) GRANTING PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES (DOC. NO. 11)

On November 14, 2017, the Court granted Plaintiffs' Motion to Remand the First Amended Complaint ("FAC") to Los Angeles Superior Court on the grounds that Defendants had removed the case on the basis of a non-operative complaint. (Doc. No. 17.) The Court deferred ruling on Plaintiffs' request for attorney's fees and provided both parties the opportunity to brief the issue. (See id.)

Defendant filed an Opposition to Plaintiffs' request for attorney's fees on November 22, 2017 (Doc. No. 19), and Plaintiffs filed a Reply on November 29, 2017 (Doc. No. 20). Counsel for both parties filed sworn declarations in connection with their briefs.

After considering all papers filed in support of the Motion, the Court GRANTS Plaintiffs' request for the reasons set forth below.

## I. BACKGROUND

Plaintiffs and Defendants offer diverging accounts of the events that have occurred in this case.

Defendants' Account[1]

Plaintiffs have been involved in litigation concerning their residential loan since at least 2014. (Pelletier Decl. ¶ 3.)

On May 15, 2017, defense counsel Kristina Pelletier sent a letter to Plaintiff on behalf of Defendants regarding a discounted payoff approved by Defendants to resolve all issues between the parties and to pay off the loan. (Id. ¶ 4.) The letter informed Plaintiffs that Defendants agreed to accept a discounted pay off of the loan in exchange for a waiver and release of claims by Plaintiffs, and set a deadline of May 19, 2017 for Plaintiffs to accept this offer. (Doc. No. 19-1, Ex. 1.) Plaintiffs expressed an interest in this proposal, and Defendants postponed the Trustee's Sale several times, ultimately re-scheduling it for August 11, 2017. (Pelletier Decl. ¶ 5.)

The final deadline for Plaintiffs to wire the payoff funds to Defendants was July 31, 2017. (Id. ¶ 6.) After Plaintiffs failed to meet this deadline, Ms. Pelletier sent Plaintiffs a letter on August 3, 2017, informing them that the payoff offer had expired and that the August 11, 2017 Trustee's Sale would proceed. (Id.; Doc. No. 19-1, Ex. 2.)

In response, Plaintiffs sent Defendants and defense counsel a "'note' that purported to pay off the Loan in full and demanded that the Trustee's sale be set aside." (Pelletier Decl. ¶ 7; Doc. No. 19-1, Ex. 3.) On September 1, 2017, Ms. Pelletier sent Plaintiffs a letter informing them that the "note" was not a proper payoff and thus, not accepted. (Pelletier Decl. ¶ 8.) On September 19, 2017, Plaintiffs filed suit, in pro se, in Los Angeles Superior Court. (Id. ¶ 9; Doc. No. 1-1.)

On September 30, 2017, Ms. Pelletier "determined that this action was appropriate for removal due to diversity of citizenship since no defendant had the same citizenship as Plaintiffs," based on an assessment of Plaintiffs' pro se complaint. (Pelletier Decl. ¶ 10.) She further determined that the deadline to remove the case was October 27, 2017, based on the service of the complaint to Defendants on September 27, 2017. (Id.; Doc. No. 1 at 5.)

On October 26, 2017, Ms. Pelletier "finalized the Removal package for filing on October 27, 2017." (Pelletier Decl. ¶ 11.) On the same day, she also sent a meet-and-confer letter to Plaintiffs, demanding that the action be dismissed based on res judicata grounds, through both conventional mail and email. (Id. ¶ 12; Doc. No. 19-1, Ex. 5.) "Later in the day on October 26, 2017," Ms. Pelletier learned that an attorney had appeared for Plaintiffs in state court and had filed a motion to consolidate this action with the pending unlawful detainer action against Plaintiffs, and that this attorney had requested to have the motion heard on shortened time. (Pelletier Decl. ¶ 13.) Ms. Pelletier only learned of the unlawful detainer action on October 26, 2017. (Id.) Ms.

---

[1] This summary is derived from the sworn declaration of defense counsel Kristina M. Pelletier, who states that she has been involved with litigation concerning Plaintiffs and their loan since 2014. (Doc. No. 19-1, Declaration of Kristina M. Pelletier ("Pelletier Decl.") ¶ 3.)

Pelletier called Plaintiffs' counsel, Mr. Ronald Freshman, to confirm his representation of Plaintiffs and learn more about the pending motion. (Id.) Mr. Freshman confirmed his representation and informed Ms. Pelletier that he had appeared on an ex parte application in state court on their behalf. (Id. ¶ 13.) Later on the same day, Ms. Pelletier emailed Mr. Freshman to send him a copy of the meet-and-confer letter she previously had sent to Plaintiffs, and inform him of Defendants' position that the action was barred by res judicata. (Id.; Doc. No. 19-1, Ex. 6.)

Ms. Pelletier states that "[a]t no time on October 26, 2017 did Plaintiffs' counsel inform me that a First Amended Complaint ('FAC') had been filed or that any Doe Amendments had been filed." (Pelletier Decl. ¶ 14.) She "even checked the state court's online docket on October 26, 2017, but no FAC, Doe Amendments, Substitution of Attorney or Motion to Consolidate showed up on the docket." (Id.) She further attests that although some other defendants received copies of the FAC by mail on October 26, 2017, she was not provided with a copy of the FAC by either Plaintiffs or Mr. Freshman. (Id.)

On the morning of October 27, 2017, Ms. Pelletier received an email from Mr. Freshman's office with multiple pleadings attached. (Id. ¶ 16.) Ms. Pelletier was not able to review the email and its attachments until later that day, after she had already filed the Notice of Removal in this Court. (Id.) She therefore "had no reason to believe that any amended complaint even existed upon filing of the Notice of Removal," and removed the case "based on the good faith belief that the initial complaint was the operative complaint at that time." (Id.) She did not discover that there was a FAC until after she had already removed the case. (Id.) After she reviewed the FAC, Ms. Pelletier determined that diversity jurisdiction still existed because she believed that the newly-added defendant (a California corporation) was fraudulently joined. (Id.)

On November 1, 2017, Defendants filed with the Court a "Notice of Additional Filings," which contained the FAC. (Id. ¶ 17.) That same day, Mr. Freshman contacted Ms. Pelletier to demand that Defendants voluntarily remand the action. (Id. ¶ 18.) Counsel corresponded by email but were unable to come to an agreement. (Id.) Mr. Freshman accused Ms. Pelletier of misconduct, while Ms. Pelletier responded that she was not aware of the addition of a California defendant until after the case was removed, that Defendants nonetheless would have removed the case, and that Defendants believed the entire action to be frivolous. (Id.) Ms. Pelletier pointed out the defects in the FAC to Mr. Freshman and requested that Mr. Freshman provide his reasoning, "in order to meaningfully meet and confer about the FAC," but Mr. Freshman refused to do so. (Id. ¶ 19; Doc. No. 19-1, Ex. 8.) On November 3, 2017, Defendants filed the Motion to Dismiss the FAC. (Pelletier Decl. ¶ 19.)

For these reasons, Ms. Pelletier asserts that she "caused to be filed [sic] the Removal of this Action based on a good faith belief that diversity jurisdiction exists. The Removal was not filed for any improper purpose." (Id. ¶ 20.)

Plaintiffs' Account[2]

Plaintiffs retained Mr. Freshman on October 23, 2017 and signed a retainer agreement on October 24, 2017. (Freshman Decl. ¶ 2.) In investigating Plaintiffs' claims, Mr. Freshman's office determined that the loan violated several California laws. (Id. ¶ 3.) As a result of the investigation, Mr. Freshman's office amended Plaintiffs' original complaint, to include, inter alia, the addition of Lexington Capital, a California corporation, as a defendant. (Id. ¶¶ 6, 7.)

As of October 25, 2017, "no defendant had noticed Plaintiffs that it was represented by counsel, though Plaintiffs had served the original complaint on all defendants." (Id. ¶ 7.) On October 25, 2017, Mr. Freshman filed a substitution of attorney and the FAC in state court, and served the FAC on all defendants. (Id. ¶ 8.) That same day, Mr. Freshman's office notified Defendants of Plaintiffs' intent to move ex parte for a stay of the unlawful detainer action pending the outcome of Plaintiffs' motion to consolidate the FAC with the unlawful detainer action. (Id.)

On October 26, 2017, Mr. Freshman appeared at an ex parte hearing in state court and filed a Motion to Consolidate the unlawful detainer case with this case. (Id. ¶ 11.) The state court granted this Motion. (Id.) In the afternoon of October 26, 2017, Mr. Freshman received an email from Ms. Pelletier. (Id. ¶ 12.) Mr. Freshman informed Ms. Pelletier that the state court had granted his Motion to Consolidate and informed her that he would send all pleadings by email. (Id. ¶ 13; Doc. No. 12-1, Ex. 6.) Ms. Pelletier also sent Mr. Freshman a copy of the letter she had sent to Plaintiffs, in which she informed Plaintiffs of Defendants' position that the case was meritless. (Doc. No. 11-1, Ex. 7.) The letter further stated "If you will not dismiss this action, please contact me [Ms. Pelletier] no later than October 31, 2017, to discuss [the issues raised in the letter]." (Id.)

On October 27, 2017, at 9:46 a.m., Mr. Freshman's office emailed to Ms. Pelletier copies of the Substitution of Attorney, FAC, and several other documents relevant to the case that had been filed in state court on October 25, 2017. (Freshman Decl. ¶ 14; Doc. No. 12-1, Ex. 8.) Approximately three hours after Mr. Freshman's office emailed Ms. Pelletier that same day, Ms. Pelletier filed her Notice of Removal. (Freshman Decl. ¶ 16.)

Plaintiffs thus assert that Defendants' removal of the case conflicts with Ms. Pelletier's letter, which Plaintiffs understood to mean that Ms. Pelletier would not remove the case before October 31, 2017. (Id. ¶ 17.) Moreover, they assert that the removal of this case prejudiced them in their unlawful detainer action in state court, which Ms. Pelletier knew or should have known. (Id. ¶ 20-21.)

---

[2] This summary is derived from the sworn declaration of Plaintiff's counsel in connection with Plaintiffs' Motion to Remand (Declaration of Ronald Freshman ("Freshman Decl."), Doc. No. 11-1 ¶ 2.)

In their Reply, Plaintiffs point out that Defendant never asserted the basis for their argument that Lexington was fraudulently joined.  (Doc. No. 20 at 3.)  Plaintiffs argue that Defendants' refusal to remand the case when they were informed that the original complaint was moot "demonstrates a fundamental lack of good faith," and that Defendants' intention to move for the state court to lift the stay of the unlawful detainer case "demonstrate[s] an intent to derail the consolidation" of the unlawful detainer case and this case.  (Id.)  Plaintiffs cite an email from Ms. Pelletier to Mr. Freshman, in which Ms. Pelletier states, "Since the UD action has already been stayed, that stay will remain in effect until my client moves to have it lifted, which we intend to do so.  As for the motion to consolidate, you can always file that motion with the federal court."  (Id. (citing Doc. No. 11-1, Ex. 9).)  Plaintiffs note that an unlawful detainer is a "state specific claim that cannot be removed to federal court, thereby making a consolidation of the two proceedings impossible."  (Id. at 4.)  Plaintiffs thus argue that the above actions evince Defendants' "willful intent to circumvent proper procedure and federal law."  (Id.)

## II. Legal Standard

Under 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  An award of costs and fees is appropriate where the removing party lacks an objectively reasonable basis for removal.  Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005); Lussier v. Dollar Tree Stores, Inc., 518 F.3d 1062, 1066 (9th Cir. 2008).  Removal is not objectively reasonable when relevant case law at the time clearly forecloses the removing party's asserted basis for removal.  See Lussier, 518 F.3d at 1066 (citing Lott v. Pfizer, Inc., 492 F.3d 789, 794 (7th Cir. 2007)).  A plaintiff need not demonstrate "bad faith" to justify an award of attorney's fees and costs, and courts have "wide discretion" in making an award under this provision.  See Moore v. Permanente Med. Group, Inc., 981 F.2d 443, 447, 448 (9th Cir. 1992).  Due to the fact that the award of fees is collateral to the decision to remand, the District Court does not lose jurisdiction to award fees and costs after it remands a case.  Id. at 445; Stallworth v. Greater Cleveland Regional Transit Authority, 105 F.3d 252 (6th Cir. 1997).

## III. DISCUSSION

### A. Whether Fees are Warranted

The Court finds that an award of attorney's fees to Plaintiffs is warranted here.  Notwithstanding Ms. Pelletier's assertion that she did not file the removal for any improper purpose and that the removal was the result of "bad timing," a review of both counsels' declarations reveals that Defendants lacked an objectively reasonable basis to remove this case for several reasons.  It is beyond dispute that the filing of an amended complaint moots the original complaint, see Ramirez v. Cty. of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015), and that removal of a non-operative complaint is grounds for remanding a case, see Taylor v. CoxCom, Inc., No. CV 12-10149-CJC (JPRx), 2013 WL 327728, at *2 n.4 (C.D. Cal. Jan. 29, 2013).

According to Ms. Pelletier's declaration, she determined on September 30, 2017, that the case was removable, and that it was necessary remove the case by October

27, 2017 because the complaint had been served on Defendants on September 27, 2017. (Pelletier Decl. ¶ 10; Doc. No. 1 at 5 ("Here, Defendants were served with the Complaint on or about September 27, 2017. Because this Notice of Removal is filed within thirty (30) days of September 27, 2017, this Notice of Removal is timely as required.").) On October 26, 2017 – the day before the deadline for timely removal, Ms. Pelletier not only finalized the papers in this case for removal, but also sent a meet-and-confer letter to Plaintiffs demanding that the action be dismissed based on res judicata grounds, in which she included the following language: "If you will not dismiss this action, please contact me **no later than October 31, 2017** to discuss the issues raised herein." (Pelletier Decl. ¶11; Doc. No. 19-1, Ex. 5) (emphasis in original). Given the language in this letter, it was reasonable for Plaintiffs to assume that Defendants would not remove the case until October 31, 2017. Ms. Pelletier's declaration is silent as to why she waited twenty-six days to prepare the Notice of Removal and why her letter to Plaintiffs purported to provide them until October 31, 2017 to respond, given that she already believed the case to be removable because of diversity jurisdiction and was aware that the case needed to be removed by October 27, 2017. Moreover, given that Ms. Pelletier states in her sworn declaration that she believed the case to be removable as of September 30, 2017, her twenty-six day delay in sending the meet-and-confer letter to Plaintiffs on the day before the removal deadline, and her lack of explanation for this delay, gives rise to the inference that the twenty-six day delay was intended to foreclose the possibility that Plaintiffs could respond to the meet-and-confer letter before Defendants removed the case on October 27, 2017.

Second, Defendants never provided a basis for their assertion that Lexington, a California corporation added as a defendant in the FAC, was fraudulently joined. "[T]here is a 'general presumption against fraudulent joinder,'" and defendants who assert that a party is fraudulently joined carry a "heavy burden" of demonstrating that "the individuals joined in the action cannot be liable under any theory." Walker v. Am. Nat'l Ins. Co., Case No. 16-cv-06255-HSG, 2017 WL 3605222, at *1 (N.D. Cal. Aug. 22, 2017) (citing Hunter v. Phillip Morris USA, 582 F.3d 1039, 1043 (9th Cir. 2009) and Ritchey v. Upjohn Drug Co., 139 F.3d 1313, 1318 (9th Cir. 1998)). Ms. Pelletier states that she became aware of the FAC only after she removed the original complaint and that she reviewed the FAC on October 27, 2017, and determined that diversity jurisdiction still existed because Lexington was fraudulently joined. (Pelletier Decl. ¶ 16.) The FAC clearly identifies Lexington as a California corporation and as a defendant in this case (FAC ¶ 13) and asserts discrete allegations against Lexington (see, e.g., id. ¶¶ 30, 47). Ms. Pelletier never explained how she determined that Lexington was fraudulently joined. Furthermore, although Defendants filed a "Notice of Additional Filings," which included a copy of the FAC, with the Court on November 1, 2017, the Motion to Dismiss -- filed two days later -- makes no mention of Lexington, nor does it address Defendants' assertion that Lexington was fraudulently joined. (See generally Doc. No. 8.) Indeed, Defendants' Motion to Dismiss appears to be directed at the original complaint, rather than the FAC. (See id.)

Third, the chronology of events indisputably supports Plaintiffs' position that Defendants were on notice that the FAC had been filed before Defendants removed the

case. On October 27, 2017, at 9:46 A.M., Mr. Freshman's office emailed to Ms. Pelletier copies of the Substitution of Attorney, FAC, and several other documents. (Id. ¶ 14; Pelletier Decl. ¶ 16.) The email states, "attached please find a copy of the Substitution of Attorney, First Amended Complaint, DOE Amendments, Notice of Related Cases, proposed order, and Ex Parte documents which were all filed and served throughout this week." (Doc. No. 11-1 at 64.) According to the Court's CM/ECF system, Ms. Pelletier filed the Notice of Removal at 12:49 P.M. on October 27, 2017. (Doc. No. 1.) Ms. Pelletier claims that she was not able to review the email from Mr. Freshman's office and its attachments until later that day, after the Removal had already been filed, and that she therefore "had no reason to believe that any amended complaint even existed upon filing of the Notice of Removal." (Pelletier Decl. ¶ 16.) Curiously, she also indicates her awareness that the email contained "multiple pleadings." (Id.) At best, Ms. Pelletier's conduct reflects incompetence and carelessness in not reviewing an email from opposing counsel's office that clearly indicates that it contains a "First Amended Complaint" received on the morning of the deadline to remove the original complaint. At worst, it reflects an intent to deceive the Court and circumvent proper procedures in litigating this case, given that removal of this case impeded the adjudication of the related unlawful detainer action in state court.

### B. Reasonableness of Fees Requested

Having determined that attorney's fees are appropriate in this case, the Court now turns to the reasonableness of fees requested. Plaintiffs request a total award of $4,989.60. Under § 1447(c), which is a fee-shifting statute, the Court "must calculate awards for attorney's fees using the lodestar method, which involves multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate, and, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." Staton v. Boeing Co., 327 F.3d 938, 965 (9th Cir. 2003) (internal citations omitted). The hours for which he requests fees are summarized as follows:

**Motion to Remand**

|                  | Hourly Rate | Hours Worked | Total      |
|------------------|-------------|--------------|------------|
| Ronald Freshman  | $350.00     | 3.5          | $1,225.00  |
| Kimberly Cromwell| $150.00     | 8            | $1,200.00  |
| Alexis Fisher    | $150.00     | 4            | $600.00    |
| Melissa Alvarez  | $100.00     | 2.27         | $227.00    |
| Total            |             |              | $3,152.00  |

**Ex Parte Application to Shorten Time to Be Heard/TRO**

|                  | Hourly Rate | Hours Worked | Total     |
|------------------|-------------|--------------|-----------|
| Ronald Freshman  | $350.00     | 1.5          | $525.00   |
| Kimberly Cromwell| $150.00     | 3            | $450.00   |
| Alexis Fisher    | $150.00     | 1            | $150.00   |
| Melissa Alvarez  | $100.00     | 1            | $100.00   |
| Total            |             |              | $1,225.00 |

**Reply**

|  | Hourly Rate | Hours Worked | Total |
|---|---|---|---|
| Ronald Freshman | $350.00 | 0.75 | $262.50 |
| Kimberly Cromwell | $150.00 | 2 | $300.00 |
| Melissa Alvarez | $100.00 | 0.5 | $50.00 |
| Total |  |  | $612.50 |

(Doc. No. 20 at 6-7.)

As the fee applicant, Mr. Freshman bears the burden of producing satisfactory evidence "that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11 (1984). The "relevant community" for purposes of the "prevailing market rate" is the "forum in which the district court sits." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 979 (9th Cir. 2008). Moreover, the Ninth Circuit has instructed that "[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases … are satisfactory evidence of the prevailing market rate." Id. (citing United Steelworkers of Am. v. Phelps Dodge Corp., 896 F.2d 403, 407 (9th Cir. 1990)). The Court may also rely on its own knowledge of customary rates and its experience regarding reasonable and proper fees. See Ingram v. Oroudjian, 647 F.3d 925, 928 (9th Cir. 2011) (per curium) ("This court has never addressed whether it is proper for a district court to rely on its own familiarity with the legal market … We conclude that the district court did not abuse its discretion either by relying, in part, on its own knowledge and experience, or by setting an hourly rate of $350 for Appellants' lawyers.").

According to Mr. Freshman's declaration, he has fourteen years' experience, and bills at $350 per hour; his certified paralegal has seven years' experience, and bills at $150 per hour; and his office bills administrative time at $100 per hour. (Freshman Decl. ¶ 24.) In reliance on its knowledge and familiarity with the local legal market, the Court is satisfied that $350 is a reasonable hourly rate for an attorney of Mr. Freshman's skill, experience, and reputation. See Ingraham, 647 F.3d at 928. The Court, however, reduces the hourly rate requested for the paralegal work rendered by Ms. Cromwell and Ms. Fisher to $125 per hour, based on its knowledge and experience of the legal market in Los Angeles. See id. The Court further notes that Mr. Freshman's declaration does not identify which of his paralegals has seven years of experience, or whether they have seven years of experience combined. Finally, the Court declines to award any fees for the clerical work rendered by Ms. Alvarez. See Jones v. Corbis Corp., No. CV 10-8668-SVW (CWx), 2011 WL 4526084, at *5 (C.D. Cal. Aug. 24, 2011) ("Activities that can be classified as secretarial or clerical in nature generally cannot be recovered as attorney's fees under the lodestar methodology"), aff'd, 489 Fed.Appx. 155 (9th Cir. 2012); see also Missouri v. Jenkins, 491 U.S. 274, 288 n.10 (1989) (holding that an attorney may not seek reimbursement for purely clerical or secretarial tasks).

The Court now turns to the reasonableness of the hours expended. Defendants argue that the sixteen hours spent by Mr. Freshman and his two paralegals on the

motion to remand is unreasonable, because "there is nothing novel" about the motion, and Plaintiffs fail to provide any explanation why it would take sixteen hours to prepare such a "basic" motion.  (Doc. No. 19 at 10.)  The Court disagrees, noting that the paralegals performed the bulk of the work on the motion to remand, which was ultimately successful and filed in a short window of time.  Defendants removed this case on October 27, 2017, and Plaintiffs filed both the Motion to Remand and the Ex Parte Application to Shorten Time on November 7, 2017.  (See Doc. Nos. 1, 11, 12.)  The Court has reviewed the timesheets submitted by Plaintiffs, which provide adequate descriptions of how Mr. Freshman, Ms. Cromwell, and Ms. Fisher spent their time, and finds that they have "produced sufficient evidence to support the claim for the fee award."  Archer v. Gipson, No. 12-cv-00261-LJO-JLT, 2015 WL 9473409, at *7 (E.D. Cal. Dec. 28, 2015).  The Court declines to award fees for time spent by Plaintiff's counsel on the Reply; the Reply was filed in connection with the request for attorney's fees and was filed after the Court remanded the case.

The Court therefore awards fees as follows:

|  | Hourly Rate | Hours Worked | Total |
| --- | --- | --- | --- |
| Ronald Freshman | $350.00 | 5 | $1750.00 |
| Kimberly Cromwell/ Alexis Fisher | $125.00 | 16 | $2000.00 |
| Total |  |  | $3,750.00 |

## IV.   CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiffs' request for attorney's fees in the amount of $3,750.

**IT IS SO ORDERED.**